JEHOADDAN L. WILSON
PRO SE
430 Iron Club Drive
Brentwood, CA 94513
PHONE (916) 217-9662 | FAX (888) 391-5349
EMAIL jehoaddanwilson@ymail.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JEHOADDAN L. WILSON,<br><br>Defendant | Case No.: CR-17-0028 JST<br><br>RESPONSE TO OPPOSITON TO MOTION TO DISMISS<br><br>Date: April 2, 2021<br>Time: 9:30 A.M.<br>Judge: Hon. Jon. S. Tigar |

<u>Points and Authorities</u>

<u>Statement of the Case</u>

The defense filed a Motion to Dismiss and the Government have filed Opposition. The defense replies to the Government's arguments in this brief.

<u>Argument</u>

**1.    Basis for Relief**

A defendant may bring a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) and Rule 7(c)(1). The Indictment alleges four causes of action: (i)

RESPONSE TO OPPOSITON TO MOTION TO DISMISS  - 1

18:287 Filing false claims (6 counts); (ii) 18:286 Conspiracy to file false claims; 18:1343 (iii) Wire fraud (6 counts); and (iv) 18:1028A Aggravated identity theft (6 counts).

Defendant denies all the allege claims in the indictment on the basis of failure to state a claim not because the indictment is not sufficient but because the indictment alleges charges that are not "definite." Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be "plain, concise and definite […]." Meaning the indictment must include all three categories which each are defined separately but all three must be met. The basis and concentration herein is on the category of "definite." "Definite" according to *https://www.merriam-webster.com/dictionary/definite#synonyms* defines "definite" as, (i) free of all ambiguity, uncertainty, or obscurity, (ii) Unquestionable, decided (iii) typically designating an identified or immediately identifiable person or thing.

Understanding the definition of "definite" as it pertains to the requirements of the indictment is "essential" because we can now visit why the "definite" requirement does not exist. It is in the non-existence of the requirement that the Government has proven conduct which is not actually criminal.

A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.,* 785 F.2d 1448, 1452 (9th Cir. 1986). The "definite" category requires the indictment to be unquestionable. If questions of law arise the indictment is not definite. The question of law that arise is, is the Internal Revenue Service a "civil service?" Section 287 of title 18 states, "Whoever makes or presents to any person of officer in the civil, military, or naval service of the United States [….]." The Government must state a claim that is plain, concise, and definite. Is the Internal Revenue Service a Military, Naval or Civil service of the United States? We can definitely say the

RESPONSE TO OPPOSITON TO MOTION TO DISMISS  - 2

Internal Revenue Service is neither a Naval nor Military Service of the United States. The question rest in the definition of "civil service." How does the law define "civil service?" As defined in 5 U.S.C. § 2101. Civil service, armed forces; uniformed services (1) the "civil service" consists of all appointive positions in the executive, judicial, and legislative branches of the Government of the United States, except positions in the uniformed services. The key words are "appointive positions." The next legal question is, does the Internal Revenue Service have "appointive positions?" According to Reorganization Plans in Title 5-Appendix, Reorganization Plan No. 1 of 1952 section 1. Abolition of Exiting Offices list all the abolished offices of the Bureau of Internal Revenue. President Harry S. Truman states in his message on January 14, 1952 that "…Bureau of Internal Revenue which plan No. 1 removes is the archaic statutory office of collector of internal revenue. Since the collectors are not appointed and cannot be removed by the Commissioner of the Internal Revenue or the Secretary of the Treasury [….]." President Truman clarified that the Internal Revenue Service was removed from office. The Internal revenue service does not have the United States Government as stakeholder or stockholder. The control of the Internal Revenue is not controlled by the United States Government because the U.S. Government is separate. I attached the entire Reorganization Plan No.1 of 1952 and 5 U.S.C § 2101 documents. President Truman's Reorganization Plan No.1 of 1952 clarifies that the "collectors" are not appointed. We all know Internal Revenue is responsible for collecting revenue. However, President Truman made is clear their positions are "not appointed."

    The Opposition attempted to provide a possible legal theory as to alleged crimes but failed because Internal Revenue Service is not an appointed position as defined in 5 U.S.C. § 2101. The "definite" requirement has not been met. Therefore, failing to state a claim that

RESPONSE TO OPPOSITON TO MOTION TO DISMISS  - 3

would according to the definition of "definite" immediately identifiable person or thing." The Internal Revenue Service cannot be identified as a civil service. All charges should be dismissed to prevent further damage of defendant's Fifth Amendment Right of the U.S. Constitution which provides protection of life, liberty, and property, and due process of law. The indictment failed in providing all three requirements of plain, concise, and definite. The "definite" category is missing. Illustrating a failed requirement and failed claim to state an offense. The Internal Revenue is unidentifiable in all alleged charges.

**ll.     The Court Should Not Impose a Rule 12(c) Deadline**

The court understands the defendant is experiencing mental health issues in the wake of Covid-19 disaster to make matters worst and more challenging to defend herself with such a strict deadline presents an unfair advantage. The defendant objects to request by opposition and request no deadline for court law and public law libraries are closed and not renting material needed to do effective research. The effective assistance of counsel right of the Sixth Amendment of the U.S. Constitution would be violated due to Covid-19 limitations and mental illness, making is already unfair for defendant to keep up with the vague language of the law.

Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss should be granted with prejudice and all charges should be dismissed.

Date:  March 19, 2021                    Respectfully submitted,

                                         /s/  Jehoaddan L. Wilson

                                         Pro Se

RESPONSE TO OPPOSITON TO MOTION TO DISMISS   - 4

# **CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2021, a true copy of the foregoing MOTION TO DISMISS was filed electronically with the Clerk of Court using the CM/ECF system which will send a notification of such filing to the following:

>DAVID L. ANDERSON (CABN 149604)
>United States Attorney
>
>HALLIE HOFFMAN (CABN 210020)
>Chief, Criminal Division
>
>ROBERT DAVID REES (CABN 229441)
>ALEXIS J. LOEB (CABN 269895)
>Assistant United States Attorney's Office
>
>450 Golden Gate Avenue, Box 36055
>San Francisco, California 94102-3495
>Telephone: (415) 436-7200
>FAX: (415) 436-7234
>Email: robert.rees@usdoj.gov

I am confident that the Congress and the public are as deeply and earnestly concerned as I am that the public business be conducted entirely upon a basis of fairness, integrity, and efficiency. I therefore hope that the Congress will give speedy approval to Reorganization Plan No. 1, in order that we may move ahead rapidly in to achieving the reorganization of the Bureau of Internal Revenue.

The task of collecting the internal revenue has expanded enormously within the past decade. This expansion has been occasioned by the necessary additional taxation brought on by World War II and essential post-war programs. In fiscal year 1940, tax collections made by the Bureau of Internal Revenue were slightly over 5 1/3 billions of dollars; in 1951, they totaled almost 50 1/2 billions. In 1940, 19 million tax returns were filed; in 1951, 82 million. In 1940, there were 22,000 employees working for the Bureau; in 1951, there were 57,000.

Throughout this tremendous growth, the structure of the revenue-collecting organization has remained substantially unchanged. The present field structure of the Bureau of Internal Revenue is comprised of more than 200 field offices which report directly to Washington. Those 200 offices carry out their functions through more than 2,000 suboffices and posts of duty throughout the country. The Washington office now provides operating supervision, guidance, and control over the principal field offices through 10 separate divisions, thus further adding to the complexities of administration.

Since the end of World War II, many procedural improvements have been made in the Bureau's operations. The use of automatic machines has been greatly increased. The handling of cases has been simplified. One major advance is represented by the recently completed arrangements to expedite criminal prosecutions in tax-fraud cases. In these cases, field representatives of the Bureau of Internal Revenue will make recommendations for criminal prosecutions directly to the Department of Justice. These procedural changes have increased the Bureau's efficiency and have made it possible for the Bureau to carry its enormously increased workload. However, improvements in procedure cannot meet the need for organizational changes.

Part of the authority necessary to make a comprehensive reorganization was provided in Reorganization Plan No. 26 of 1950, which was one of several uniform plans giving department heads fuller authority over internal organizations throughout their departments. The studies of the Secretary of the Treasury have culminated since that time in a plan for extensive reorganization and modernization of the Bureau. However, his existing authority is not broad enough to permit him to effectuate all of the basic features of the plan he has developed.

The principal barrier to effective organization and administration of the Bureau of Internal Revenue which plan No. 1 removes is the archaic statutory office of collector of internal revenue. Since the collectors are not appointed and cannot be removed by the Commissioner of Internal Revenue or the Secretary of the Treasury and since the collectors must accommodate themselves to local political situations, they are not fully responsive to the control of their superiors in the Treasury Department. Residence requirements prevent moving a collector from one collection district to another, either to promote impartiality and fairness or to advance collectors to more important positions. Uncertainties of tenure add to the difficulty of attracting to such offices persons who are well versed in the intricacies of the revenue laws and possessed of broadgaged administrative ability.

It is appropriate and desirable that major political offices in the executive branch of the Government be filled by persons who are appointed by the President by and with the advice and consent of the Senate. On the other hand, the technical nature of much of the Government's work today makes it equally appropriate and desirable that positions of other types be in the professional career service. The administration of our internal-revenue laws at the local level calls for positions in the latter category.

Instead of the present organization built around the offices of politically appointed collectors of internal revenue, plan No. 1 will make it possible for the Secretary of the Treasury to establish not to exceed 25 district offices. Each of these offices will be headed by a district commissioner who will be responsible to the Commissioner of Internal Revenue and will have full responsibility for administering all internal-revenue activities within a designated area. In addition, all essential collection, enforcement, and appellate functions can be provided for in each local area and under one roof so far as is practicable. It is not proposed to discontinue any essential facilities which now exist in any local areas. Rather, the facilities will be extended and the service to taxpayers improved. These new arrangements should make it possible for the individual taxpayer to conduct his business with the Bureau much more conveniently and expeditiously.

In addition to making possible greatly improved service to the taxpayer, the establishment of the district offices will provide opportunity in the field service of the Bureau of Internal Revenue for the development of high-caliber administrators with experience in all phases of revenue administration. These offices will be the backbone of a modern, streamlined pattern of organization and operations with clear and direct channels of responsibility and supervision from the lowest field office to the Commissioner, and through him to the Secretary of the Treasury. The creation of this new framework of district offices is a necessary step in carrying out the overall reorganization of the Bureau.

Plan No. 1 also makes it possible to provide a new framework of supervisory offices in the headquarters of the Bureau of Internal Revenue. Under plan No. 1, the offices of Deputy Commissioner, Special Deputy Commissioner, and Assistant Commissioner are abolished. Three Assistant Commissioners, all in the classified civil service, are authorized, and will be available, to perform such functions as may be assigned to them. The intention of the Secretary of the Treasury under the comprehensive reorganization is to utilize one Assistant Commissioner to assist the Commissioner of Internal Revenue in supervising the operations of the district offices, another Assistant Commissioner to aid in the preparation of technical rulings and decisions, and the third Assistant Commissioner to supervise for the Commissioner the inspection activities of the Bureau.

Two additional advantages will be obtained when the reorganization around this new framework is completed.

First, the strong inspection service which the Secretary is establishing will keep the work of the Bureau under close and continuous observation. Working under the direct control of the Commissioner of Internal Revenue, it will be responsible for promptly detecting and investigating any irregularities.

Second, the new pattern of organization will strengthen and clarify lines of responsibility throughout the Bureau, thus simplifying and making more effective and uniform the management control of the organization. This is essential in any effort to provide our principal revenue collection agency the best possible administration.

In order to eliminate Presidential appointment and senatorial confirmation with respect to the Assistant General Counsel for the Bureau of Internal Revenue, and in order to provide a method of appointment comparable to that obtaining in the case of other assistant general counsel of the Department of the Treasury, plan No. 1 abolishes that office and provides in lieu thereof a new office of Assistant General Counsel with appointment under the classified civil service.

# REORGANIZATION PLAN NO. 1 OF 1952

**Effective Mar. 14, 1952, 17 F.R. 2243, 66 Stat. 823, as amended June 28, 1955, ch. 189, §12(c)(19), 69 Stat. 182; Sept. 13, 1982, Pub. L. 97–258, §5(b), 96 Stat. 1068, 1085**

Prepared by the President and transmitted to the Senate and the House of Representatives in Congress assembled, January 14, 1952, pursuant to the provisions of the Reorganization Act of 1949, approved June 20, 1949 [see 5 U.S.C. 901 et seq.].

**BUREAU OF INTERNAL REVENUE**

## Section 1. Abolition of Existing Offices

There are abolished the offices of Assistant Commissioner, Special Deputy Commissioner, Deputy Commissioner, Assistant General Counsel for the Bureau of Internal Revenue, Collector, and Deputy Collector, provided for in sections 3905, 3910, 3915, 3931, 3941, and 3990, respectively, of the Internal Revenue Code [of 1939]. The provisions of the foregoing sentence shall become effective with respect to each office abolished thereby at such time as the Secretary of the Treasury shall specify, but in no event later than December 1, 1952. The Secretary of the Treasury shall make such provisions as he shall deem necessary respecting the winding up of the affairs of any officer whose office is abolished by the provisions of this section.

## Sec. 2. Establishment of New Offices

(a) New offices are hereby established in the Bureau of Internal Revenue as follows: (1) three offices each of which shall have the title of "Assistant Commissioner of Internal Revenue"; (2) so many offices, not in excess of 25 existing at any one time, as the Secretary of the Treasury shall from time to time determine, each of which shall have the title of "District Commissioner of Internal Revenue"; and (3) so many other offices, not in excess of 70 existing at any one time, and with such title or titles, as the Secretary of the Treasury shall from time to time determine.

(b) [Repealed. Pub. L. 97–258, §5(b), Sept. 13, 1982, 96 Stat. 1068, 1085. Subsection established a new and additional office of Assistant General Counsel. See 31 U.S.C. 301.]

## Sec. 3. Appointment and Compensation

Each assistant commissioner and district commissioner, the assistant general counsel, and each other officer provided for in section 2 of this reorganization plan shall be appointed by the Secretary of the Treasury under the classified civil service and shall receive compensation which shall be fixed from time to time pursuant to the classification laws, as now or hereafter amended. (As amended Act June 28, 1955, ch. 189, §12(c)(19), 69 Stat. 182).

## Sec. 4. Transfer of Functions

There are transferred to the Secretary of the Treasury the functions, if any, that have been vested by statute in officers, agencies, or employees of the Bureau of Internal Revenue of the Department of the Treasury since the effective date of Reorganization Plan Numbered 26 of 1950 (15 F.R. 4935).

## Message of the President

To the Congress of the United States:

I transmit herewith Reorganization Plan No. 1 of 1952, prepared in accordance with the Reorganization Act of 1949 and providing for reorganizations in the Bureau of Internal Revenue of the Department of the Treasury.

A comprehensive reorganization of that Bureau is necessary both to increase the efficiency of its operations and to provide better machinery for assuring honest and impartial administration of the internal revenue laws. The reorganization plan transmitted with this message is essential to accomplish the basic changes in the structure of the Bureau of Internal Revenue which are necessary for the kind of comprehensive reorganization that is now required.

By bringing additional personnel in the Bureau of Internal Revenue under the merit system, Reorganization Plan No. 1 likewise removes what the Commission on Organization of the Executive Branch of the Government described as "one of the chief handicaps to effective organization of the Department * * *."

It is my determination to maintain the highest standards of integrity and efficiency in the Federal service. While those standards have been observed faithfully by all but a relatively few public servants, the betrayal of their trust by those few demands the strongest corrective action.

The most vigorous efforts are being and will continue to be made to expose and punish every Government employee who misuses his official position. But we must do even more than this. We must correct every defect in organization that contributes to inefficient management and thus affords the opportunity for improper conduct.

The thorough reorganization of the Bureau of Internal Revenue which I propose will be of great help in accomplishing all of these ends. It is an integral part of a program to prevent improper conduct in public service, to protect the Government from insidious influence peddlers and favor seekers, to expose and punish wrong-doers, and to improve the management and efficiency of the executive branch.

The success of the reorganization of the Bureau of Internal Revenue will to a considerable extent depend upon the ability to attract the best qualified persons to the key positions throughout the Bureau. In order to do so, it is necessary to make provision for more adequate salaries for such key positions. Plan No. 1 establishes in the Bureau of Internal Revenue a maximum of 70 offices with titles determined by the Secretary of the Treasury. Those offices are in addition to the offices with specific titles also provided for in plan No. 1 and to any positions established under other authority vested in the Department of the Treasury. The compensation of these officials will be fixed under the Classification Act of 1949, as amended, but without regard to the numerical limitations on positions set forth in section 505 of that act. This provision will enable the Chairman of the Civil Service Commission, or the President, as the case may be, to fix rates of pay for those offices in excess of the rates established in the Classification Act of 1949 for grade GS–15 whenever the standards of the classification laws so permit.

All organizational changes under plan No. 1 will be put into effect as soon as it is possible to do so without disrupting the continued collection of revenue. Plan No. 1 will in any event be effective in its entirety no later than December 1, 1952.

The taking effect of the reorganizations provided for in Reorganization Plan No. 1 of 1952 will make possible many benefits in improved organization and operations which may be expected to produce substantial savings in future years. Those savings should not be expected to be reflected in an immediate reduction in expenditure by the Bureau of Internal Revenue but in an improved service to the public and a more efficient collection of revenue.

It should be emphasized that abolition by plan No. 1 of the offices of collectors and others will in no way prejudice any right or potential right of any taxpayer. The abolition of offices by plan No. 1 will not abolish any rights, privileges, powers, duties, immunities, liabilities, obligations, or other attributes of those offices except as they relate to matters of appointment, tenure, and compensation inconsistent with plan No. 1. Under the Reorganization Act of 1949, all of these attributes of office will attach to the office to which the functions of the abolished office are delegated by the Secretary of the Treasury.

After investigation, I have found and hereby declare that each reorganization included in Reorganization Plan No. 1 of 1952 is necessary to accomplish one or more of the purposes set forth in section 2(a) of the Reorganization Act of 1949.

I have found and hereby declare that it is necessary to include in the accompanying Reorganization Plan No. 1, by reason of reorganizations made thereby, provisions for the appointment and compensation of the officers specified therein. The rates of compensation fixed for these officers are not in excess of those which I have found to prevail in respect of comparable officers in the executive branch.

I cannot emphasize too strongly the importance which should be attached to the reorganization plan that I am now transmitting to the Congress. The fair and efficient administration of the Federal internal-revenue laws is of vital concern to every citizen. All of us have a right to insist that the Bureau of Internal Revenue be provided with the finest organization that can be devised. All of us are entitled to have that organization manned by personnel who get their jobs and keep them solely because of their own integrity and competence. This reorganization plan will be a major step in achieving those objectives.

Harry S. Truman.

The White House, January 14, 1952.